**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

- - - - - - - - - - - - - - - - - - - - - - - - - -x
                                                    :
In re:                                              :        Chapter 11
                                                    :
DELTA PETROLEUM CORPORATION,                        :        Case No. 11-14006 (KJC)
et al.,[1]                                          :
                                                    :        Jointly Administered
                        Debtors.                    :
                                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - -x
DELTA PETROLEUM GENERAL                             :
RECOVERY TRUST                                      :
and                                                 :
PAR PETROLEUM CORPORATION,                          :
                                                    :
                                                    :        Adv. Pro. No. 12-50876 (KJC)
                        Plaintiffs,                 :
                                                    :
            v.                                      :
                                                    :
ROGER PARKER,                                       :
- and -                                             :        **Hrg. Date: TBD**
DELIA PARKER,                                       :        **Obj. Due:  N/A**
                                                    :
                                                    :        **Related Docket No. 1**
                        Defendants.                 :
- - - - - - - - - - - - - - - - - - - - - - - - - -x

**AMENDED COMPLAINT FOR AVOIDANCE AND/OR DISCHARGE OF
INTERESTS, ENFORCEMENT OF BAR DATE ORDER, AND RECOVERY
OF PROPERTY OF THE ESTATE**

Delta Petroleum General Recovery Trust ("Delta Petroleum Trust")

and Par Petroleum Corporation ("Par Petroleum") and its affiliates (each a

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Delta Petroleum Corporation (0803); DPCA LLC (0803); Delta Exploration Company, Inc. (9462); Delta Pipeline, LLC (0803); DLC, Inc. (3989); CEC, Inc. (3154); Castle Texas Production Limited Partnership (6054); Amber Resources Company of Colorado (0506); and Castle Exploration Company, Inc. (9007). The Reorganized Debtors' headquarters are located at: 1301 McKinney Street, Suite 2025, Houston, TX 77010.

"Reorganized Debtor" and collectively, the "Reorganized Debtors," and together with Delta Petroleum Trust, the "Plaintiffs"), for their complaint against Roger Parker and Delia Parker (each a "Defendant" and together, "Defendants"), allege, on personal knowledge as to their own actions and on information and belief as to the actions of others, as follows:

## SUMMARY OF ACTION

1.      Through this action, the Plaintiffs seek a ruling from this Court declaring, among other things, that certain of the Debtors' assets (in particular, interests related to certain leases off the coast of California) that vested "free and clear" in the Reorganized Debtors upon emergence from bankruptcy, did so without being burdened by Defendants' alleged rights and claims.  Defendant Roger Parker obtained these rights and claims against the Debtors pursuant to an assignment agreement from 1999.  Further, Defendant Roger Parker purportedly assigned his interest under the 1999 assignment agreement to his ex-wife, Defendant Delia Parker, pursuant to a divorce settlement that transpired after the commencement of the above-captioned jointly administered bankruptcy cases (the "Chapter 11 Cases").

2.      In connection with the 1999 assignment agreement between Debtor Delta Petroleum Corporation ("Delta") and Defendant Roger Parker, Defendant Roger Parker was either granted (i) a contractual right to payment (or a personal property right) that gave rise to a prepetition claim, in which case any and all of Defendants' related rights and claims were discharged by the Debtors' chapter

2

11 plan of reorganization (the "Plan")[2] upon its effectiveness, or (ii) a real property interest, which will be avoided and recovered pursuant to sections 544(a)(3) and 550 of title 11 of the United States Code (the "Bankruptcy Code"), as of the commencement of the Chapter 11 Cases, because Defendant Roger Parker failed to record his real property interest prior to the Petition Date (as defined herein) pursuant to applicable law.

       3.     Because Defendant Roger Parker could not have conveyed more than he owned, the assignment to Defendant Delia Parker, at best, assigned Defendant Roger Parker's interest in his prepetition claim.  Although Defendants may have been entitled to the treatment afforded to holders of allowed prepetition claims, Defendants each failed to file a proof of claim, despite Defendant Roger Parker having been provided with actual notice of the bar date and Defendant Delia Parker having been subject to notice of the bar date through publication notice.  Such failure results in the disallowance of Defendants' claim by operation of this Court's order establishing the bar date.

       4.     Moreover, Defendants received payments – either directly (in the case of Defendant Roger Parker) or indirectly (in the case of Defendant Delia Parker, as a result of subsequent transfers of such funds by Defendant Roger Parker to Defendant Delia Parker) – during the postpetition period on account of the alleged interest.  Defendants were not entitled to these payments and, therefore, all such

---

[2]   Terms not otherwise defined herein shall have the meanings ascribed to them in the Plan.

payments should be disgorged and paid to the Plaintiffs for the benefit of all holders of allowed unsecured claims.

5.     In addition, through this action Plaintiffs seek to enforce against Defendants the provisions of the Confirmation Order (as defined herein) and the Debtors' Plan that relate to the discharge injunction (the "Chapter 11 Plan Injunction").

## JURISDICTION AND VENUE

6.     The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.  This action is a core proceeding under 28 U.S.C. § 157(b)(2).

7.     Venue is proper under 28 U.S.C. § 1409.

8.     This Court has personal jurisdiction over Defendants under Rule 7004(f) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

9.     Pursuant to sections 11.1(b), (e), (j), (m), (p) and (s) of the Debtors' Plan and paragraph 70(d), (g), (l), (o), (r) and (u) of the Confirmation Order, this Court has jurisdiction over the causes of action set forth herein.

10.    This adversary proceeding is initiated under Bankruptcy Rule 7001.

## PARTIES

11.    Upon the Effective Date (as defined herein) of the Debtors'

4

Plan, Delta emerged from chapter 11 as Par Petroleum, one of the Reorganized Debtors.

12.     Delta Petroleum Trust is a general recovery trust created for the benefit of the Reorganized Debtors in these Chapter 11 Cases.  Delta Petroleum Trust was formed to liquidate certain trust assets and object to, settle and/or compromise any disputed claims for the benefit of the Reorganized Debtors. Sections 6.6 and 10.14 of the Debtors' Plan, together with paragraph 13 of the Confirmation Order, expressly create and authorize Delta Petroleum Trust to bring the causes of action set forth herein.

13.     Upon information and belief, Defendant Roger Parker is an individual who resides in Colorado and is a former chairman and chief executive officer of Delta, and Defendant Delia Parker is a resident of Colorado and is the ex-wife of Defendant Roger Parker.

## FACTUAL BACKGROUND

**A.     The Bankruptcy Cases**

14.     Delta and certain of its affiliates, as debtors and debtors-in-possession (collectively, the "Debtors"), each commenced on December 16, 2011 (the "Petition Date", except in the case of Castle Exploration Company, Inc., for which "Petition Date" shall mean January 6, 2012), a voluntary case under chapter 11 of the Bankruptcy Code.

15.     Throughout the pendency of the Chapter 11 Cases, the

5

Debtors operated their respective businesses as debtors-in-possession pursuant to

sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner was

appointed in the Chapter 11 Cases.  A committee of unsecured creditors (the

"Committee") was appointed in the Chapter 11 Cases on June 15, 2012.

16.    On February 14, 2012, the Court entered the *Order (I)*

*Establishing Bar Dates For Filing Proofs Of Claim, (II) Approving Proof Of Claim*

*Form, Bar Date Notices And Mailing And Publication Procedures, (III)*

*Implementing Uniform Procedures Regarding 503(B)(9) Claims, And (IV) Providing*

*Certain Supplemental Relief* (D.I. 303) (the "Bar Date Order").

17.    On February 14, 2012, the Debtors filed and served Defendant

Roger Parker with the *Notice Of Deadline Of March 23, 2012 At 4:00 P.M. (ET) To*

*File Proofs Of Claim For Prepetition Claims And 503(b)(9) Claims* (D.I. 313) (the

"Bar Date Notice").  Further, publication notice of the Bar Date Notice was provided

in the USA Today on February 21, 2012, as indicated in the *Certificate Of*

*Publication Re: Notice Of Deadline Of March 23, 2012 At 4:00 P.M. To File Proofs*

*Of Claim For Prepetition Claims And 503(B)(9) Claims* (D.I. 335) (the "Bar Date

Notice Certificate of Publication ") filed on February 24, 2012.

18.    On July 6, 2012, the Debtors filed and served Defendant

Roger Parker with the *Notice Of (I) Deadline For Casting Votes To Accept Or Reject*

*The Joint Chapter 11 Plan of Reorganization of Delta Petroleum Corporation and*

*its Debtor Affiliates, (II) The Hearing To Consider Confirmation Of The Joint*

6

*Chapter 11 Plan of Reorganization of Delta Petroleum Corporation and its Debtor Affiliates, And (III) Certain Related Matters* (D.I. 697) (the "Plan and Confirmation Hearing Notice").

19.     On August 13, 2012, the Debtors filed and served Defendant Roger Parker with the Plan and *Amended Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Delta Petroleum Corporation and Its Debtor Affiliates* (D.I. 885).

20.     A hearing to consider confirmation of the Debtors' Plan (the "Confirmation Hearing") was held before this Court on August 15, 2012.

21.     On August 16, 2012, the Court entered the *Findings of Fact, Conclusions of Law and Order Confirming the Debtors' Third Amended Joint Chapter 11 Plan of Reorganization* (D.I. 925) (the "Confirmation Order"), which confirmed the Debtors' Plan.

22.     On August 31, 2012 (the "Effective Date"), the Debtors satisfied all conditions under the Plan, which became effective, and all of the Debtors' assets vested either in a joint venture, in the Recovery Trusts (as defined under the Plan and which includes the Delta Petroleum Trust), or in the Reorganized Debtors free and clear of all claims and liens, as each term is defined in the Bankruptcy Code.

23.     On August 31, 2012, the Debtors filed and served Defendant Roger Parker with the *Notice Of (I) Effective Date of Third Amended Joint Chapter*

7

*11 Plan of Reorganization of Delta Petroleum Corporation and its Affiliated Debtors*

*And (II) Bar Dates For Filing Certain Claims* (D.I. 947) (the "Effective Date

Notice").

           24.      Section 10.1 of the Plan provides for the vesting of all

property of the Debtors' estates free and clear of any Liens, Claims and Equity

Interests (as defined in the Plan), as follows:

> ***Vesting of Assets***. Except as otherwise provided in this Plan, on the Effective Date all property comprising the Estates not otherwise vested in the Joint Venture Company or the Recovery Trusts shall revest in the Estate of the applicable Reorganized Debtor, free and clear of all Liens, Claims and Equity Interests (other than as expressly provided herein).... On and after the Effective Date, the Reorganized Debtors shall be authorized to operate their respective businesses, and to use, acquire or dispose of assets without supervision or approval by the Bankruptcy Court, and free from any restrictions of the Bankruptcy Code or the Bankruptcy Rules.

           25.      Further, in conjunction with the foregoing, paragraph 15 of the

Confirmation Order provides that:

> ***Free and Clear.*** Except as otherwise provided in the Plan, on the Effective Date all property comprising the Estates not otherwise vested in the Joint Venture Company or the Recovery Trusts shall revest in the Estate of the applicable Reorganized Debtor, free and clear of all Liens, Claims and Equity Interests (other than as expressly provided in the Plan). Except as otherwise provided in the Plan, on the Effective Date all property to be transferred to the Joint Venture Company shall be transferred free and clear of all Liens, Claims and Equity Interests (other than as expressly provided in the Plan). On and after the Effective Date, the Reorganized Debtors shall be authorized to operate their respective businesses, and to use, acquire or dispose of assets without supervision or approval by the Court, and free from any restrictions of the Bankruptcy Code or the Bankruptcy Rules. Except as otherwise provided in the Plan, the Debtors, as the Reorganized

Debtors, shall continue to exist on and after the Effective Date as separate Persons with all of the powers available to such Persons under applicable law, without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) in accordance with such applicable law.

26.     As defined under section 1.1 of the Plan, "***Claim*** has the meaning set forth in section 101(5) of the Bankruptcy Code," and "***Lien*** has the meaning set forth in section 101(37) of the Bankruptcy Code."

27.     Section 10.3 of the Plan provides for the binding effect of the Plan, stating as follows:

> ***Binding Effect.*** Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code and subject to the occurrence of the Effective Date, the provisions of this Plan shall bind any Holder of a Claim against, or Equity Interest in, the Debtors and such Holder's respective successors and assigns, whether or not the Claim or Equity Interest of such Holder is impaired under this Plan and whether or not such Holder has accepted this Plan.  The provisions of this Plan shall bind the respective Estates of the Debtors and any chapter 7 Trustee that might be appointed upon a subsequent conversion of any of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code.

28.     Further, paragraph 19 of the Confirmation Order similarly provides that:

> ***Binding Effect.*** …On or after entry of this Confirmation Order and subject to the occurrence of the Effective Date, the provisions of the Plan shall bind the Debtors, Reorganized Debtors, the Recovery Trustee, the Disbursement Agent, the Joint Venture Company, all Holders of Claims or Equity Interests in the Debtors and such Holders' respective successors and assigns (irrespective of whether or not the Claim or Equity Interest of such Holder is impaired under the Plan and whether or not such Holder has accepted the Plan) all entities that are parties to or are subject to settlements, compromises, releases, discharges and injunctions described in the Plan or in this Confirmation

9

Order, any and all non-Debtor parties to executory contracts and unexpired leases with any of the Debtors, any subsequent trustees appointed under any chapter of title 11 of the U.S. Code, any other party in interest in the Chapter 11 Cases and the respective heirs, executors, administrators, successors or assigns, if any, of any of the foregoing, and shall not be subject to rejection. All agreements, instruments and other documents filed in connection with the Plan or included in the Plan Supplements (as they may be amended or modified pursuant to the terms of the Plan) are hereby approved.

**B.      Oil And Gas Leases And Overriding Royalty Interests**

29.      The Debtors owned and/or operated natural gas and crude oil producing assets and held interests in leases (the "Leases") in certain lands that contain oil and gas producing wells.  Among those Leases were certain offshore oil and gas leases on the outer continental shelf of the United States, including interests in certain offshore California leases (the "OCS Leases") that Delta acquired from Whiting Petroleum Corporation ("Whiting") in 1999.

30.      When the Debtors acquired the OCS Leases from Whiting in 1999, the parties originally contemplated that Whiting would convey to Delta its interests in the OCS Leases, including without limitation, title (in other words, a conveyance of the real property rights).  See Article 1 of the Purchase Agreement (as defined herein), which is attached hereto as Exhibit A.  However, following execution of the Purchase Agreement (as defined herein), Whiting and Delta realized that Whiting might not be able to get the necessary consents and approvals to make such a real property conveyance, and as a result, on or about August 25, 1999, the parties entered into an amendment to the purchase agreement contemplating that

10

Whiting would convey the economic equivalent of conveying real property title (among other things) to the OCS Leases by assigning a "net operating interest" to Delta in certain of the OCS Leases.  This "net operating interest" was intended to be a derivative product to ensure that Delta received all of the same economic interests despite not being able to acquire the real property interest originally agreed to by the parties.

31.    To that end, the relevant acquisition and conveyance agreements executed by Delta and Whiting reflect an ambiguity as to whether Delta acquired real or personal property interests.  The Debtors acquired the OCS Leases from Whiting pursuant to: (i) the purchase and sale agreement, dated June 8, 1999, between Whiting, Whiting Programs, Inc. and Delta (the "Purchase Agreement"), a copy of which is Exhibit A hereto; (ii) the amendment to the Purchase Agreement (the "Amendment"), a copy of which is Exhibit B hereto, which was filed in a Form 8-K/A, dated August 25, 1999, with the United States Securities and Exchange Commission, but the Amendment itself is dated *as of* June 8, 1999; and (iii) the conveyance and assignment agreement, dated December 1, 1999, between Whiting, Whiting Programs, Inc. and Delta (the "Conveyance Agreement," and together with the Purchase Agreement and Amendment, the "Whiting Agreements"), a copy of which is Exhibit C hereto.

32.    Notably, the Conveyance Agreement, which was the last Whiting Agreement executed, provided definitively that Whiting was to convey to

11

Delta a "net operating interest" (as defined therein) in certain of the OCS Leases.

33.    Notwithstanding the issues described above, in connection with the Debtors' acquisition of their interests in the OCS Leases, in December 1999 the Debtors executed an assignment to Defendant Roger Parker to create a non-operating overriding royalty interest in a specified percentage of certain "oil and gas leases and lands" and which burdened the oil, gas and other leased minerals produced, saved and sold from or allocated to the lands covered by the OCS Leases, free and clear of certain expenses (the "Parker ORRI").

34.    To facilitate this assignment, Delta and Defendant Roger Parker executed an assignment agreement, dated December 1, 1999, which provided that the Parker ORRI was equal to one percent (1.0%) in certain of Delta's oil and gas Leases (the OCS Leases), free and clear of all development, production and operating expenses (the "Parker Assignment Agreement"), a copy of which is Exhibit D hereto.  As such, the Parker Assignment agreement purports to convey to Defendant a true overriding royalty interest, which under California law is a real property interest in the OCS Leases.  However, the actual nature of the  Parker ORRI – whether it is a real property interest or a personal property interest – depends upon the extent of the interests conveyed to Delta by Whiting in 1999 because Delta could not convey to Defendant more than it owned.

35.    Prior to the Petition Date, the Debtors remitted to Defendant Roger Parker, pursuant to the Parker Assignment Agreement, payments on account

12

of the one percent (1.0%) Parker ORRI (the "Parker ORRI Payments").

36.     Subsequent to the Petition Date, the Debtors continued to remit the Parker ORRI Payments to Defendant Roger Parker pursuant to the Parker Assignment Agreement (the "Post-Petition Payments").  Following emergence from chapter 11, the Reorganized Debtors suspended the Post-Petition Payments made to Defendant Roger Parker, pending a final judgment in this adversary proceeding.  The Plaintiffs should not have made the Post-Petition Payments and, therefore, are seeking to disgorge those funds.

37.     Upon information and belief, Defendant Roger Parker purportedly assigned the Parker ORRI to his ex-wife, Defendant Delia Parker, pursuant to a divorce settlement that transpired after the Petition Date (the "Post-Petition Parker Assignment").  The Post-Petition Parker Assignment was executed on June 23, 2012, but provides for an effective date as of February 11, 2012.

38.     By this action, Plaintiffs seek to avoid and recover any interest related to the Parker ORRI, to the extent the Parker ORRI is a real property interest; disallow, expunge and discharge any claims and rights Defendants may have to the OCS Leases relating to the Parker ORRI, the Parker Assignment Agreement and the Post-Petition Parker Assignment; recover any and all Post-Petition Payments (and any subsequent transfers of such funds); and enforce the Chapter 11 Plan Injunction.

## CAUSES OF ACTION

### COUNT I

### (Avoidance And Recovery Of The Parker ORRI Under Section 544(a)(3) And 550 Of The Bankruptcy Code)

39.     Plaintiffs hereby repeat and reallege each of the above

paragraphs as though fully set forth here.

40.     Section 544(a)(3) of the Bankruptcy Code provides that:

(a) [t]he trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by … (3) a bona fide purchaser of real property, other than fixture, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser of real property and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

41.     Further, Section 550(a) of the Bankruptcy Code provides, in

part, that:

to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee.

42.     To the extent that the Parker ORRI is a true overriding royalty

interest, then under applicable state law, the Parker ORRI is a real property interest.

Defendant Roger Parker obtained the Parker ORRI on account of a prepetition

transfer by a Debtor.

14

43.     Further, the appropriate county recording office for purposes of providing potential bona fide purchasers with notice of the Parker ORRI is Santa Barbara County, California.

44.     The Parker ORRI was not recorded in the Santa Barbara County's recording office prior to the Petition Date.

45.     By reason of these failures, the Parker ORRI, to the extent it is in fact a real property interest, is voidable by Plaintiffs as a hypothetical bona fide purchaser of real property as of the Petition Date.

46.     Accordingly, to the extent the Parker ORRI is in fact a real property interest, Plaintiffs are entitled to a judgment, pursuant to sections 544(a)(3) and 550 of the Bankruptcy Code and applicable state law, against Defendants, declaring that the Parker ORRI was avoided and recovered as of the Petition Date and recovering from Defendant Delia Parker any purported transfer of the Parker ORRI on account of the Post-Petition Parker Assignment.

**COUNT II**

**(Declaration That The Parker ORRI, The Parker Assignment Agreement And Any Rights Arising Thereunder Were Discharged, Thus Stripped from the Underlying OCS Leases Held By The Debtors And, Therefore, The Parker ORRI, The Parker Assignment Agreement, The Purported Post-Petition Parker Assignment And Any Rights Arising Thereunder Are Not Enforceable Against The Reorganized Debtors Upon Consummation Of The Plan Confirmed Under Bankruptcy Code Section 1141)**

47.     Plaintiffs hereby repeat and reallege each of the above paragraphs as though fully set forth here.

15

48.     Section 1141(a) of the Bankruptcy Code provides, in part,

that:

> the provisions of a confirmed plan bind the debtor, any entity issuing
> securities under the plan, any entity acquiring property under the plan,
> and any creditor, equity security holder, or general partner in the
> debtor, whether or not the claim or interest of such creditor, equity
> security holder, or general partner is impaired under the plan and
> whether or not such creditor, equity security holder, or general partner
> has accepted the plan.

49.     Further, section 1141(b) of the Bankruptcy Code provides

that, "[e]xcept as otherwise provided in the plan or the order confirming the plan, the

confirmation of a plan vests all property of the estate in the debtor."  Finally, section

1141(c) of the Bankruptcy Code provides, in part, that, "except as otherwise

provided in the plan or in the order confirming the plan, after confirmation of a plan,

the property dealt with by the plan is free and clear of all claims and interests of

creditors, equity security holders, and of general partners in the debtor."

50.     Section 10.5 of the Plan, together with paragraph 45 of the

Confirmation Order (which provides for substantially similar discharge terms),

provides that:

> ***Discharge of the Debtors.***  Except to the extent otherwise provided in
> this Plan or the Confirmation Order, the treatment of all Claims
> against or Equity Interests in the Debtors under this Plan shall be in
> exchange for and in complete satisfaction, discharge and release of,
> all Claims against or Equity Interests in the Debtors of any nature
> whatsoever, known or unknown, including any interest accrued or
> expenses incurred thereon from and after the Petition Date, or against
> their Estates or properties or interests in property.   Except as
> otherwise provided in this Plan or the Confirmation Order, upon the

16

Effective Date, all Claims against and Equity Interests in the Debtors shall be satisfied, discharged and released in full exchange for the consideration provided under this Plan.  Except as otherwise provided in this Plan or the Confirmation Order or under the terms of the documents evidencing the Exit Loan, all Persons shall be precluded from asserting, against the Debtors, the Reorganized Debtors, or their respective properties or interests in property, any other Claims based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date.  In accordance with the foregoing, except as provided in this Plan or the Confirmation Order, the Confirmation Order shall constitute a judicial determination, as of the Effective Date, of the discharge of all such Claims and other debts and liabilities of the Debtors, pursuant to sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void and extinguish any judgment obtained against the Debtors or the Reorganized Debtors at any time, to the extent such judgment is related to a discharged Claim.

51.      Further, Section 10.10(a) of the Plan, together with paragraph 53 of the Confirmation Order (which provides for substantially similar injunction terms), provides that:

*Term of Injunctions or Stays.* Except as otherwise expressly provided herein, and except with respect to enforcement of this Plan, all Persons who have held, hold or may hold any Claim against, or Equity Interest in, the Debtors as of the Effective Date will be permanently enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind in any forum with respect to such Claim or Equity Interest against the Reorganized Debtors, the Joint Venture Company, the Recovery Trusts, or their property, (ii) the enforcement, attachment, collection or recovery in any manner or by any means any judgment, award, decree or order against the Reorganized Debtors, the Joint Venture Company, the Recovery Trusts, or their respective property with respect to such Claim or Equity Interest, (iii) creating, perfecting or enforcing any Lien or other encumbrance of any kind against the Reorganized Debtors, the Joint Venture Company, the Recovery Trusts, or against any property or interests in property of the Reorganized Debtors with respect to any such Claim or Equity

17

Interest, (iv) asserting a right of setoff, subrogation or recoupment of any kind against any obligation due from the Reorganized Debtors, the Joint Venture Company, the Recovery Trusts, or against any property or interests in property of the Reorganized Debtors, the Joint Venture Company or the Recovery Trusts with respect to such Claim or Equity Interest, (v) commencing or continuing any action, in any forum, that does not comply or is inconsistent with the provisions of this Plan and (vi) pursuing any such Claim released pursuant to Section 10.5, 10.6, 10.7 or 10.8 hereof. For the avoidance of doubt, nothing in this Section shall be deemed to affect or waive any potential defenses that any defendant to a Cause of Action or Wapiti Cause of Action has asserted or could assert against the Debtors or the Recovery Trustee, as the case may be, in any resulting litigation, or the rights of the Debtors to object to such potential defenses asserted by such defendants therein.  The right of any defendant to a Wapiti Cause of Action or Cause of Action (except as provided in Section 10.7 herein with respect to the ZCOF Parties) to assert defenses, at law and in equity, and to defend against actions is preserved to the extent allowed under applicable law.

52.    Defendant Roger Parker was served with the Bar Date Notice, Plan and Confirmation Hearing Notice and the Effective Date Notice, as well as other notices filed by the Debtors that put Defendant Roger Parker on notice of the Chapter 11 Cases and confirmation of the Debtors' Plan.  Further, publication notice of the Bar Date Notice was provided in the USA Today on February 21, 2012.  Upon information and belief, Defendant Delia Parker learned, or should have learned, of the Chapter 11 Cases and the matters of which Defendant Roger Parker had notice from Defendant Roger Parker (in connection with the Post-Petition Parker Assignment), the publication of the Bar Date Notice or otherwise.

53.    Under the express terms of the Plan, the effectiveness of the Plan vested all property of the estates in a joint venture described under the Plan, the

18

Recovery Trusts (as defined under the Plan and which includes the Delta Petroleum

Trust), or in the Reorganized Debtors free and clear of all Liens, Claims, and Equity

Interests (subject to certain enumerated exceptions and exclusions not applicable

here), including free and clear of the Parker ORRI, the Parker Assignment

Agreement, the purported Post-Petition Parker Assignment and any claims arising

thereunder.  The OCS Leases vested in the Reorganized Debtors pursuant to (*inter

alia*) sections 6.2(b) and 10.1 of the Plan.

> 54.    Accordingly, Plaintiffs are entitled to a judgment, pursuant to

section 1141 of the Bankruptcy Code and the express provisions of the Plan and

Confirmation Order, against Defendants declaring that: (i) the Reorganized Debtors'

confirmed Plan is binding on Defendants; (ii) upon confirmation of the Plan, the

OCS Leases (among other assets of the Debtors' estates) vested in the Reorganized

Debtors free and clear of any Liens, Claims, and Equity Interests (subject to certain

enumerated exceptions and exclusions not applicable here), including free and clear

of the Parker ORRI, the Parker Assignment Agreement, the purported Post-Petition

Parker Assignment and any interests, rights and claims arising thereunder; and (iii)

the Parker ORRI, the Parker Assignment Agreement, the purported Post-Petition

Parker Assignment and any rights arising thereunder are not enforceable against the

Reorganized Debtors as of the Effective Date of the Plan.

## COUNT III

**(Declaration That Defendants' Claims Against The Debtors' Estates For Payments Under The Parker ORRI, The Parker Assignment Agreement And The Purported Post-Petition Parker Assignment Were Disallowed, Expunged And Discharged Upon Confirmation And Consummation Of The Plan By Virtue Of Failure To File A Proof Claim And The Plan Discharge Pursuant To Bankruptcy Code Section 1141)**

55.     Plaintiffs hereby repeat and reallege each of the above paragraphs as though fully set forth here.

56.     The Bar Date Order established that (*inter alia*): (i) the last date and time for filing proofs of claim against the Debtors for any and all prepetition claims was March 23, 2012 at 4:00 p.m. (E.T.) (the "Bar Date"); and (ii) any entity who fails to file a proof of claim on or before the Bar Date will be forever barred, estopped and enjoined from asserting such claim (or filing a proof of claim) against the Debtors.

57.     Moreover, as set forth in the Bar Date Notice Certificate of Publication, publication notice of the Bar Date Notice was provided for unknown creditors on February 21, 2012.

58.     As of the Bar Date, Defendant Delia Parker was an unknown creditor of the Debtors.

59.     Defendants failed to file a proof of claim.

60.     Paragraph 19 of the Bar Date Order provides, in part, that:

> ***Effect of Failure to File by Applicable Bar Date.*** Any entity that is required pursuant to this Order to file a proof of claim for a Prepetition Claim and/or a 503(b)(9) Claim in these chapter 11 cases

20

pursuant to the Bankruptcy Code, the Bankruptcy Rules or this Order with respect to a particular claim against a Debtor, but that fails to do so on or by an applicable Bar Date, is forever barred, estopped and enjoined from: asserting any Prepetition Claim and/or 503(b)(9) Claim against any of the Debtors (or filing a proof of claim for a Prepetition Claim and/or 503(b)(9) Claim with respect thereto), and the Debtors and their property shall be forever discharged from any and all indebtedness or liability with respect to such Prepetition Claim or 503(b)(9) Claim.

61.     Further, the Debtors' Schedules and Statements, filed with the Court and dated January 6, 2012 (D.I. 140), listed Defendant Roger Parker as a creditor holding an unliquidated claim.  Under Bankruptcy Rule 3003(c)(2), any creditor whose claim or interest is not scheduled or is scheduled as disputed, contingent, or unliquidated and who fails to timely file a proof of claim (as prescribed under Bankruptcy Rule 3003(c)(3)), shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution.

62.     Accordingly, Plaintiffs are entitled to a judgment, pursuant to the Bar Date Order, Plan and Confirmation Order, against Defendants declaring that: (i) the Bar Date Order and the confirmed Plan are binding on Defendants; (ii) any and all of Defendants' claims against the Debtors related to the Parker ORRI, the Parker Assignment Agreement and the purported Post-Petition Parker Assignment are barred; (iii) Defendants are permanently barred, estopped and enjoined from pursuing any such claims against the Reorganized Debtors and their property (including any claims relating to the Parker ORRI, the Parker Assignment Agreement and the purported Post-Petition Parker Assignment); (iv) any and all

21

claims Defendants may have against the Debtors' estates, including claims for payment under the Parker ORRI, the Parker Assignment Agreement, the purported Post-Petition Parker Assignment and any other claims arising thereunder, are discharged as of the Effective Date; and (v) accordingly, any claims against the Debtors, the Reorganized Debtors, the joint venture described under the Plan and the Delta Petroleum Trust related to or arising under the Parker ORRI, the Parker Assignment Agreement and the purported Post-Petition Parker Assignment are disallowed, expunged and discharged as of the Effective Date of the Plan.

## COUNT IV
### (Unjust Enrichment And Clawback Of Post-Petition Payments)

63.     Plaintiffs hereby repeat and reallege each of the above paragraphs as though fully set forth here.

64.     Under applicable state law, where a defendant receives a benefit at the plaintiff's expense under circumstances in which it would be unjust for the defendant to retain such benefit, unjust enrichment requires that the defendant return the benefit to the plaintiff or compensate the plaintiff for its loss.

65.     To the extent that the Parker ORRI is a real property interest, then on account of the avoidance of the Parker ORRI and the Post-Petition Parker Assignment as of the commencement of the Chapter 11 Cases, Defendant Roger Parker was not entitled to receive, and the Debtors were not obligated to make, the Post-Petition Payments.

22

66.     From the Petition Date to the Effective Date, the Debtors Post-Petition Payments to Defendant Roger Parker totaled $66,555.32 in the aggregate.  In connection with the Post-Petition Payments made on account of the Parker ORRI, the Debtors' estates received no benefit.

67.     Accordingly, pursuant to applicable state law, Plaintiffs are entitled to a judgment against Defendants declaring that Defendant Roger Parker, and Defendant Delia Parker to the extent she was the immediate transferee of such funds, were unjustly enriched to the extent of the Post-Petition Payments, and ordering the immediate return of such funds, including the return of any subsequent transfers of such funds, plus interest, or awarding compensatory damages, to Plaintiffs.

## COUNT V
### (Post-Petition Fraudulent Transfers Under State Law)

68.     Plaintiffs hereby repeat and reallege each of the above paragraphs as though fully set forth here.

69.     Under applicable state law, a transfer is deemed fraudulent where a debtor makes a transfer or incurs an obligation to a third party without receiving a reasonably equivalent value in exchange for such transfer or obligation and the debtor was insolvent at that time or became insolvent as a result of such transfer or obligation.

70.     Here, from the Petition Date to the Effective Date, the Debtors

23

made Post-Petition Payments to Defendant Roger Parker that totaled $66,555.32 in the aggregate.  On account of the avoidance of the Parker ORRI as of the commencement of the Chapter 11 Cases, the Debtors were not obligated to make the Post-Petition Payments related thereto and the Debtors did not receive a reasonably equivalent value in exchange for such Post-Petition Payments.  Further, the Debtors were insolvent at the time of such transfers.

71.    Accordingly, pursuant to applicable state law, Plaintiffs are entitled to a judgment against Defendants declaring that the Post-Petition Payments constituted fraudulent transfers and ordering the immediate return of such funds, including the return of any subsequent transfers of such funds, plus interest, or awarding compensatory damages, to Plaintiffs.

**COUNT VI**

**(Avoidance and Recovery Of Post-Petition Payments, And Any Subsequent Transfers Thereof, Under Sections 549 And 550 Of The Bankruptcy Code)**

72.    Plaintiffs hereby repeat and reallege each of the above paragraphs as though fully set forth here.

73.    Section 549 of the Bankruptcy Code provides, in part, that:

(a) …the trustee may avoid a transfer of property of the estate – (1) that occurs after the commencement of the case; and (2)(A) that is authorized only under section 303(f) or 542(c) of this title; or (B) that is not authorized under this title or by the court.

74.    The Debtors made payments to Defendant Roger Parker during the pendency of the Chapter 11 Cases in connection with the Parker ORRI.

24

Upon information and belief, Defendant Roger Parker subsequently transferred certain of such funds to Defendant Delia Parker.

75.     To the extent that the Debtors conveyed to Defendant Roger Parker a personal property interest in the OCS Leases in 1999, the Post-Petition Payments should have ceased immediately upon the commencement of the Debtors' Chapter 11 Cases and were not authorized by this Court.

76.     Accordingly, to the extent Defendants obtained personal property interests in the OCS Leases pursuant to the Parker Assignment Agreement and the purported Post-Petition Parker Assignment, Plaintiffs are entitled to a judgment, pursuant to sections 549 and 550 of the Bankruptcy Code, against Defendant, avoiding and recovering the Post-Petition Payments, including the recovery of any subsequent transfers of such funds, plus interest or awarding Plaintiffs compensatory damages therefor.

### COUNT VII

**(Turnover Of The Post-Petition Payments, And Any Subsequent Transfers Thereof, Under Section 542(a) Of The Bankruptcy Code)**

77.     Plaintiffs hereby repeat and reallege each of the above paragraphs as though fully set forth here.

78.     Section 542(a) of the Bankruptcy Code provides, in part, that:

(a) …an entity, other than a custodian, in possession, custody or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential

25

value or benefit to the estate.

79.    The Post-Petition Payments constitute property of the Debtors' estates to be recovered by and on behalf of the Reorganized Debtors.

80.    Accordingly, Plaintiffs are entitled to a judgment, pursuant to sections 542(a) of the Bankruptcy Code, against Defendants, ordering the immediate payment and turnover of any and all Post-Petition Payments, and/or any subsequent transfers of such funds, plus interest or awarding Plaintiffs compensatory damages therefor.

**COUNT VIII**

**(Enforcement Of Debtors' Chapter 11 Plan Injunction)**

81.    Plaintiffs hereby repeat and reallege each of the above paragraphs as though fully set forth here.

82.    As set forth herein, the express provisions of the Debtors' Plan and Confirmation Order provide that certain of the Debtors' assets, including the assets at issue here, vested in the Reorganized Debtors free and clear of all claims and liens, as each term is defined in the Bankruptcy Code.

83.    Further, the express provisions of section 10.3 of the Plan and paragraph 19 of the Confirmation Order provide for the binding effect of the Plan.

84.    Moreover, section 10.10(a) of the Plan and paragraph 45 of the Confirmation Order (as set forth herein), provide that under the Chapter 11 Plan Injunction all persons, including, without limitation, Defendants, who held any claim

26

against the Debtors as of the Effective Date, are permanently enjoined, from and after the Effective Date, from (*inter alia*) commencing or continuing in any manner any action or other proceeding with respect to such claims against the Reorganized Debtors, the joint venture described under the Plan, the Recovery Trusts (as defined under the Plan and which includes the Delta Petroleum Trust) or their respective property.

85.     Accordingly, Plaintiffs are entitled to a judgment, pursuant to the express provisions of the Plan and Confirmation Order, permanently enforcing the Chapter 11 Plan Injunction against Defendants.

WHEREFORE, Delta Petroleum Trust respectfully requests the Court enter a judgment against Defendants:

(a)     avoiding and recovering the Parker ORRI and the Post-Petition Parker Assignment as of the commencement of the Chapter 11 Cases;

(b)     declaring that the Parker ORRI, the Parker Assignment Agreement, the purported Post-Petition Parker Assignment and any interests, rights and claims arising thereunder were discharged and thus stripped from the Debtor's OCS Leases on the Effective Date of the Plan and, therefore, the Parker ORRI, the Parker Assignment Agreement, the purported Post-Petition Parker Assignment and any rights arising thereunder are not enforceable against the Reorganized Debtors as of the Effective Date of the Plan;

(c)     declaring Defendants' claims against the Debtors'

27

estates were barred and discharged as of the Effective Date and that Defendants are permanently enjoined from pursuing such claims against the Reorganized Debtors;

(d)    declaring that Defendants' rights related to the Parker ORRI, the Parker Assignment Agreement, the purported Post-Petition Parker Assignment and any other claims arising thereunder as against the Debtors, the Reorganized Debtors, the joint venture described under the Plan and the Delta Petroleum Trust are disallowed, expunged and discharged as of the Effective Date of the Plan.

(e)    recovering, for the benefit of Plaintiffs, the Post-Petition Payments made on account of the Parker ORRI, and/or any subsequent transfers of such funds, plus interest or awarding Plaintiffs compensatory damages therefor;

(f)    ordering the immediate payment and turnover of any and all Post-Petition Payments, and/or any subsequent transfers of such funds, plus interest or awarding Plaintiffs compensatory damages therefor;

(g)    enforcing the Chapter 11 Plan Injunction against Defendants; and

28

(h)    granting such other and further relief, including costs, expenses and attorneys' fees, as the Court deems just and proper.


Dated:        January 4, 2013
              Wilmington, Delaware


                        /s/ Anthony W. Clark
                        Anthony W. Clark (I.D. No. 2051)
                        Kristhy M. Peguero (I.D. No. 4903)
                        Skadden, Arps, Slate, Meagher & Flom LLP
                        One Rodney Square
                        P.O. Box 636
                        Wilmington, Delaware 19899-0636
                        (302) 651-3000

                        and

                        Ron Meisler
                        Ebba Gebisa
                        Skadden, Arps, Slate, Meagher & Flom LLP
                        155 North Wacker Drive
                        Chicago, Illinois 60606-1720
                        (312) 407-0700

                        *Counsel for Delta Petroleum General Recovery Trust and Par Petroleum Corporation*